UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

|  |  |
|---|---|
| CORPORATION OF GONZAGA UNIVERSITY, | NO.  CV-14-0093-LRS |
| Plaintiff, | **ORDER ON GONZAGA'S MOTION FOR [PARTIAL] SUMMARY JUDGMENT** |
| -vs- |  |
| PENDLETON ENTERPRISES, LLC, a Washington LLC; PENDLETON BROADCASTING, INC., a Washington Corporation; and JAMIE PENDLETON, an individual and a resident of the State of Washington, |  |
| Defendants. |  |

**BEFORE THE COURT** is Plaintiff Corporation of Gonzaga University's ("Gonzaga") Motion For Summary Judgment[1] (ECF No. 21) filed on July 16, 2014.  Oral argument was held on September 4, 2014 in Spokane, Washington.  Defendants opposed

---

[1]The motion is a partial summary judgment as Gonzaga's motion seeks to have a ruling only on the alleged violation of §43(a) of the Lanham Act (15 U.S.C. §1125(a)).

ORDER - 1

the motion (ECF No. 26).  The court took Gonzaga's motion under advisement at the conclusion of the hearing.

**DISCUSSION**

**A.  Introduction**

Plaintiff Gonzaga brought an action against Defendant Pendleton Enterprises, LLC, Pendleton Broadcasting Inc., and Jamie Pendleton (collectively referred to as "Defendants"), alleging violations of the Lanham Act, trademark infringement (federal, state and common law), Washington Consumer Protection Act, and unfair competition.  Gonzaga moved for partial summary judgment on its §43(a) Lanham Act (15 U.S.C. §1125(a)) claim.  Plaintiff asserts a commercial interest in preventing unauthorized use of Gonzaga trademarks because such use will allegedly create confusion concerning Plaintiff's endorsement of Defendants' bar and radio station related activities, products and services.

**B.  Legal Standard**

A party may move for summary judgment on a "claim or defense" or "part of ... a claim or defense." Fed.R.Civ.P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party

ORDER - 2

is entitled to judgment as a matter of law. *Id.*

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*.

Where the moving party will have the burden of proof at trial, it must demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir.2007). Where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 324-25, 106 S.Ct. 2548. If the moving party meets its initial burden, the

ORDER - 3

opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505; *see also* Fed.R.Civ.P. 56(c), (e).

When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir.2011). It is not enough for a party opposing summary judgment to "rest on mere allegations or denials of his pleadings." Anderson, 477 U.S. at 259. Instead, the nonmoving party must go beyond the pleadings to designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 325.

It is not the Court's task "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir.1996). Counsel has an obligation to clearly lay out support for the claim asserted. *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir.2001). The Court "need not examine the entire file for evidence establishing a genuine issue of fact, where the

ORDER - 4

evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Id.*

**C.   Gonzaga's Motion for [Partial] Summary Judgment**

   **1.   Gonzaga's Identifiers and Marks**

   Plaintiff Gonzaga, is an institution of higher learning in Spokane, Washington and has become well-known for its athletic programs in the Spokane area. The following are the "words, terms, names, symbols, devices, and combinations thereof" (hereinafter referred to as Identifiers and Marks) that Gonzaga asserts were used by the Defendants to reference or identify Gonzaga in connection with Defendants' commercial and promotional purposes:

> "**GONZAGA UNIVERSITY**", which is the subject of U.S. Trademark Registration No. 1,931,286, and is an incontestable U.S. trademark per 15 U.S.C. §1065. ECF No. 23.

> "**GONZAGA UNIVERSITY BULLDOGS**", which is the subject of U.S. Trademark Registration No. 1,931,285, and is an incontestable U.S. trademark per 15 U.S.C. §1065. *Id.*

> "**ZAGS**", which is the subject of U.S. Trademark Registration No. 1,931,449, and is an incontestable U.S. trademark per 15 U.S.C. §1065. *Id.*

/ / /

ORDER - 5

**Gonzaga's "Bulldog mascot wearing a Gonzaga jersey",** which the record indicates that Gonzaga has used in Spokane since the 1980's, and which is the subject of Washington State Trademark Registration File No. 56807. *Id.*

**Gonzaga's Bulldog Head,** for which Gonzaga has been awarded Washington State Trademark Registration File No. 56780, showing a date of first use in Washington in 1998. *Id.*

**Gonzaga's Bulldog Head combined with the word Gonzaga,** for which Gonzaga has been awarded Washington State Trademark Registration File No. 56959, showing a date of first use in Washington in 1998. *Id.*

Gonzaga's Identifier **"GU",** for which Gonzaga has been awarded Washington State Trademark Registration File No. 56960, showing a date of first use in Washington in 1998. *Id.*

**Gonzaga's Bulldog Head combined with "GU",** for which Gonzaga has been awarded Washington State Trademark Registration File No. 56958, showing a date of first use in Washington in 1998. *Id.*

## 2. The Undisputed Facts Underlying the Section 43(a) Claim

The controlling facts of the case at bar are relatively uncomplicated and uncontested. Plaintiff Gonzaga has a rather well-known basketball team in the Spokane area and throughout the State of Washington.  ECF No. 24.  In producing and promoting the sport of NCAA basketball, Gonzaga has adopted

ORDER - 6

and widely publicized the name/nickname (GONZAGA UNIVERSITY, GONZAGA UNIVERSITY BULLDOGS, ZAGS) and a team symbol, Spike, a bulldog who wears a Gonzaga jersey.  Since the 1998-1999 season when Gonzaga began to enjoy national prominence and using the Gonzaga Identifiers and Marks, thousands of fans have attended basketball games where the team Identifiers and Marks are displayed on jersey fronts of the players, bulldog mascot and throughout the game programs.  Other fans observe the team Identifiers and Marks during televised games. Still more fans are exposed to Gonzaga's Identifiers and Marks through sporting news coverage in newspapers, magazines, and radio.

Gonzaga alleges that Defendants have used the bulldog mascot wearing a Gonzaga jersey, a bulldog mascot head with a spike collar and other Gonzaga Identifiers and Marks in conjunction with their radio station services and bar services intending the consuming public to recognize the Gonzaga Identifiers as symbols of Gonzaga.

Photographs of these uses were posted in commerce on Defendants' online social media websites which advertise and promote Defendants' radio station and bar services.  ECF No.

ORDER - 7

22 at 7-26.   Relative to the Spokane Downtown Daiquiri Factory, Gonzaga asserts that the use of a bulldog mascot wearing a Gonzaga-identifying jersey (Gonzaga or GU), as well as the posting of photographs on Defendants' online social media websites, were intended to reference or identify Gonzaga in connection with the commercial advertising and promotion of defendants' bar services, the Spokane Downtown Daiquiri Factory.

Gonzaga asserts that the Defendants' use of the Gonzaga Identifiers and Marks is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Gonzaga with the radio station and bar services offered by Defendants' businesses, or as to the origin, sponsorship, or approval of Defendants' radio station and bar services, or commercial activities.

With regard to the radio station services, Gonzaga argues that the photographs make it appear that the third party businesses being promoted and/or Pendleton Broadcasting's 104.5 radio station are affiliated with, associated with or in some other commercial business relationship with Gonzaga.

Gonzaga reports there have been multiple instances of

ORDER - 8

actual confusion by members of the public in Spokane as to whether there was an "affiliation, connection, or association" or a "sponsorship, or approval" between Defendants and Gonzaga. One such example of this reported association (negative) with one of Defendants' businesses, the Downtown Spokane Daiquiri Factory, is as follows:

> **> Dear GU Athletics – As a Spokane resident, a mother of student athletes and fan of GU – I was very dismayed to see Spike associated in this manner with this particular business. This bar has promoted their signature drink called Date Grape, an obvious pun on Date Rape, and refuses to cooperate, acknowledge, or show any remorse for their blatant insensitivity for victims of sexual assault. This issue has prompted nationwide press coverage and as a result, they simply put the word "Banned" over the word Date. They are now promoting their "Q-Laid", "Strawberry Deep Throat Banana" and "We Still In This Bitch". See below as well as the numerous pictures still showing of Spike in their public photo gallery.**
> **>**
> **> I do not know if you are aware of this or not, the pictures are in their photo gallery on a public page and this is not a good image for your mascot. Thank you.**

ECF No. 24, Kassel Decl., ¶ 10.

Gonzaga (through its Associate Athletic Director Kristopher Kassel) requested that Defendant Pendleton cease

ORDER - 9

further use of the Gonzaga Identifiers and Marks, but the uses did not stop.  Gonzaga concludes that Defendants are using Gonzaga's Identifiers and Marks without authorization and such uses make it appear that there is an affiliation with, association with or some other commercial business relationship with Gonzaga-- when there is none.

### 3. Defendants' Opposition

Defendants oppose the motion arguing that in a trademark action, likelihood of confusion is a material fact[2] which should preclude summary judgment. Defendants do not respond to Plaintiff's argument that there is a likelihood of confusion with their use of Gonzaga's Identifier and Marks.  Defendants, despite there being no affidavits containing contrary facts, assert there exist genuine issues of fact, yet to be resolved. Additionally, Defendants argue that the parties have yet to commence any discovery.

Defendants further argue that the doctrine of "fair use" should be held applicable to this trademark infringement action and that the Court should apply the doctrine to

---

[2]Defendants cite *Lloyd's Food Products, Inc. v. Eli's, Inc.*, 987 F.2d 766, 767 (Fed. Cir. 1993).

ORDER - 10

sanction their use of a replica of Gonzaga's Identifiers. Plaintiff replies that Defendants do not mount a colorable factual or legal argument why their use of Gonzaga's Identifiers and Marks is a "fair use" or what facts they need from the discovery process to support this or any of their contentions.

Another issue advanced by Defendants is whether a mark owned by the Plaintiff can be protected outside of the class of services for which it is registered. Plaintiff replies that all trademarks can apply outside of the "class" of services because the legal test for trademark infringement is whether there is a likelihood of confusion. The Court finds it unnecessary to decide this issue as this motion only covers a claim pursuant to §43(a) of the Lanham Act for unregistered marks.

Defendants also assert that the Washington State trademarks were obtained after this suit was filed. Plaintiff replies that the Washington State trademarks each certify that the marks are trademarks owned by Gonzaga, carry the evidentiary value set forth in R.C.W. §19.77.040, and identify Gonzaga as the source of the goods. Again, this motion does

ORDER - 11

not cover state registered trademark infringement.

Finally, Defendants suggest that Gonzaga does not have standing to bring suit.

**D.   Section 43(a) Violation – Likelihood of Confusion Analysis**

In its Complaint, Gonzaga claims that Defendants are liable for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §1125(a).  Gonzaga indicated at the hearing that the instant motion for summary judgment was based only on Section §43(a) of the Lanham Act (15 U.S.C. §1125(a)). Although it is somewhat unclear, Gonzaga's arguments cover claims of false designation of origin, federal/common law trademark infringement (collectively, "infringement claims"), and unfair competition claims, which claims cannot be separated for purposes of the Court's analysis.  Section 43(a) covers unregistered marks and is the federal counterpart of certain state unfair competition and anti-dilution rights.

Section 43(a) of the Lanham Act gives an entity a cause of action for the use by any person of "any word, term, name, symbol, or device, or any combination thereof * * * which * * * is likely to cause confusion * * * as to origin, sponsorship, or approval of his or her goods." 15 U.S.C. §

ORDER – 12

1125(a).

In order to sue under the statute at issue in the instant motion, it is not necessary for a mark or trademark to be registered. *New West Corp. v. NYM Co. of California, Inc.*, 595 F.2d 1194, 1198 (9th Cir. 1979). Whether the theory is Section 43(a) of the Lanham Act or state unfair competition law,[3] the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks. *Id*. at 1201. The burden on plaintiff is twofold: First, plaintiff must establish secondary meaning in their use of the Gonzaga Identifiers and Marks. Second, Defendants' activities must be shown to have created a likelihood of confusion.

Secondary meaning has been defined as association, nothing more. *Carter-Wallace, Inc. v. Proctor & Gamble Co.*, 434 F.2d 794, 802 (9th Cir. 1970). The basic element of secondary meaning is a mental recognition in buyers' and potential buyers' minds that products connected with the symbol or device emanate from or are associated with the same source.

---

[3]Plaintiff's Fourth Cause of Action is for common law unfair competition but was not specifically argued in the summary judgment motion.

ORDER - 13

*Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817, 200 U.S.P.Q. 713, 716 (9th Cir. 1980).

The creation of confusion as to sponsorship of products is also actionable. *See HMH Publishing Co., Inc. v. Brincat*, 504 F.2d 713, 716 (9th Cir. 1974); *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 204-05 (2nd Cir. 1979). The standard, however, applied by the courts in determining whether a showing of secondary meaning has been made in a sponsorship context is not well-defined. *See, e.g., HMH Publishing*, 504 F.2d at 718 (secondary meaning is demonstrated by a showing that the purchasing public generally believes that a product which bears that mark is "in some fashion connected" with the products of the registrant); *Wyatt Earp Enterprises, Inc. v. Sackman, Inc.*, 157 F.Supp. 621, 625 (S.D.N.Y.1958) (collapsing the analysis of likelihood of confusion and secondary meaning).

The correct standard should be reachable deductively. *National Football League Properties, Inc. v. Wichita Falls Sportswear*, 532 F.Supp. 651, 659 (D.C.Wash.1982). There is a symmetry between the concepts of secondary meaning and likelihood of confusion. Secondary meaning requires an

ORDER - 14

examination of the non-infringing party's mark and product, and tests the connection in the buyers' mind between the product bearing the mark and its source. *Id.* Likelihood of confusion in a sponsorship context focuses on the product bearing the allegedly infringing marks and asks whether the public believes the product bearing the marks originates with or is somehow endorsed or authorized by the plaintiff. *Id. citing Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 388-90 (5th Cir. 1977). Just as the relevant inquiry for the establishment of likelihood of confusion in a sponsorship context is the belief that sponsorship or authorization was granted, the inquiry should be the same in order to establish secondary meaning. *Wichita*, 532 F.Supp. at 659.

As the Ninth Circuit has explained it, § 43(a) provides two bases for liability: "(1) false representations concerning the origin, association or endorsement of goods or services through the wrongful use of another's distinctive mark, name, trade dress or other device ('false association'), and (2) false representations in advertising concerning the qualities of goods or services ('false advertising')." *Waits v.*

ORDER - 15

*Frito-Lay, Inc.*, 978 F.2d 1093, 1108 (9th Cir.1992) (citations omitted). Here, Plaintiff asserts a violation of the Lanham Act §1025 [sic] as its First Claim for relief. ECF No. 1 at 8. A false endorsement claim is available where defendants' conduct has allegedly created "a likelihood of confusion as to whether plaintiffs were endorsing [defendants'] product." *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 812 (9th Cir.1997).

"Section 43(a)(1) [of the Lanham Act] provides similar protection to trademarks regardless of registration." *Bell v. Harley Davidson Motor Co.*, 539 F.Supp.2d 1249, 1254 (S.D.Cal.2008) (*citing Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 n. 6 (9th Cir.1999)). "To establish a trademark infringement claim ..., [Plaintiff] must establish that [Defendant] is using a mark confusingly similar to a valid, protectable trademark of [Plaintiff's]." *Brookfield Commc'ns*, 174 F.3d at 1046. "To show that he has a protectable trademark interest, Plaintiff must have been the first to use the mark in the sale of goods or services." *Sengoku Works, Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir.1996).

ORDER - 16

To prevail on an infringement claim, a trademark owner[4] must prove that the alleged infringer used the mark at issue in commerce and in connection with the sale, distribution, or advertising of goods or services in such a way that the use "is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114; *see also* 15 U.S.C. § 1125(a). Infringement disputes are "intensely factual in nature," and therefore summary judgments are generally disfavored. *Interstellar Starship Serv., Ltd. v. Epix, Inc.,* 184 F.3d 1107, 1109 (9th Cir.1999).

As between Plaintiff and Defendants, this Court finds Plaintiff is the owner of the Gonzaga Identifiers and Marks, which include protectable marks.[5]  Defendants have not denied

---

[4]Although Defendants assert an affirmative defense calling into question the ownership of the marks, there is no dispute that Gonzaga owns the Marks, which are federally and state registered or acquired through actual and continuous use. (ECF No. 22, Hendricksen Decl., ¶¶ 2-5.) This "constitutes prima facie evidence of the validity of the registered mark and of [Gonzaga's] exclusive right to use the mark on the goods and services specified in the registration." *Brookfield*, 174 F.3d at 1047.

[5]Three word marks are incontestible federal trademarks ("GONZAGA UNIVERSITY," GONZAGA UNIVERSITY BULLDOGS, and "ZAGS"). Plaintiff may also prevail if it establishes that it has a common law trademark or service mark. *See Boston*

ORDER - 17

that each of the Gonzaga Identifiers or trademarks refer to or identify Gonzaga in the Spokane area.  With the exception of other non-local teams that also use a bulldog mascot, Defendants have not identified any other possible entity to which the Gonzaga Identifiers and Marks refer.

The Court finds that Defendants have made commercial use of a mark that is similar enough to cause confusion in the minds of consumers about the origin of the goods or services in question. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 117, 125 S.Ct. 542, 160 L.Ed.2d 440 (2004).

To assess likelihood of confusion, courts in the Ninth Circuit consider the *Sleekcraft* factors:

```
(1) the strength of the plaintiff's mark;
(2) relatedness of the goods;
(3) similarity of the marks;
(4) evidence of actual confusion;
(5) marketing channels used;
(6) likely degree of purchaser care;
(7) defendant's intent in selecting the mark; and
(8) likelihood of expansion of the product lines.
```

*Wendt*, 125 F.3d at 812 (applying *AMF, Inc. v. Sleekcraft*

*Professional Hockey Association v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir.), Cert. denied, 423 U.S. 991, 96 S.Ct. 408, 46 L.Ed.2d 312 (1975).

ORDER - 18

*Boats*, 599 F.2d 341 (9th Cir.1979)). This list of factors is not exhaustive and is not intended to be applied as a "mechanistic formula." *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1404 (citations and internal marks omitted), *cert. dismissed*, *Penguin Books USA, Inc. v. Dr. Seuss Enterprises*, 521 U.S. 1146, 118 S.Ct. 27, 138 L.Ed.2d 1057 (1997). "Other variables may come into play depending on the particular facts presented." *Id.* As the nature of the factors makes clear, the " 'likelihood of confusion' standard is predominantly factual in nature." *Id.*

In the Spokane area, there is no dispute that Gonzaga's Identifiers and Marks are commercially strong. The relatedness of goods/services is somewhat nebulous as one could argue that an athletic/school program class is not close to the Defendants' bar/radio program class, but Gonzaga arguably has opportunities to associate with or approve of a broad range of different entities to become affiliated with its programs. In this case, there can be no dispute that Defendants are using Gonzaga's Identifiers and Marks identically except the bulldog mascot wearing the Gonzaga identifying jersey. Even though the bulldog costume is

ORDER - 19

different than Gonzaga's, the bulldog costume also includes other Gonzaga Identifiers to further create the impression that it is the Gonzaga Bulldog mascot or is affiliated or approved by Gonzaga.

Evidence of actual confusion is not required to find a likelihood of confusion. Moreover, if Plaintiff offers compelling evidence of actual confusion, such evidence may be "persuasive proof that future confusion is likely." *SunEarth, Inc., v. Sun Earth Solar Power Co.*, 846 F.Supp.2d 1063, 1079 (N.D.Cal.2012) (citations and quotations omitted). The Court finds that Defendants have used Gonzaga's Identifiers to benefit from any connection (negative or positive) the public might draw between the well-know sports team (and its goodwill)and Defendants' sports bar or radio station. Plaintiff has also provided compelling evidence of the existence of at least public comment and confusion from the use of the Spike-like mascot at the Spokane Daiquiri Factory.

As far as marketing channels go, in this case both Gonzaga and the Defendants advertise and promote their respective goods and services to the public in Spokane, Washington using the Gonzaga Identifiers and Marks. From the photographs

ORDER - 20

included in Exhibit B to the Kassel Declaration, the Defendants have been using their bulldog mascot with the Gonzaga or GU jersey in the promotion of Defendants' businesses (as well as the businesses of the customers of Defendant's radio station 104.5 JAMZ) in the Spokane area. Furthermore, when it comes to well-known college sports programs, the range of businesses and products with which the college may become associated or approve is wide and varied.

The Spokane area has a very large number of Gonzaga fans who are loyal to Gonzaga and its various athletic teams, and based upon the photographs attached as Exhibit B to the Kassel Declaration, Defendants are using Gonzaga's Identifiers and Marks in order to benefit commercially from the well known fan recognition and loyalty.

The fact that the Defendants are using several of Gonzaga's Identifiers and Marks in most instances, is strong evidence that Defendants are intending to create the impression that Defendants are affiliated, connected or associated with Gonzaga, or that there was a sponsorship or approval of Defendants goods, services, or commercial activities by Gonzaga. Evidence would suggest Defendants are

ORDER - 21

intending to use the notoriety and reputation of Gonzaga to gain attention, advertising and benefit in Defendants' own businesses, and in the case of Defendants' radio station (104.5 JAMZ), promotional benefit for the third party businesses.

As far as the other remaining Sleekcraft factors, these either favor Gonzaga or are neutral.

To address Defendants' defense of fair use raised in their opposition, the fair use doctrine typically allows adjustments of conflicts between the first amendment and the copyright laws, *See Wainwright Securities Inc. v. Wall Street Transcript Corp.*, 558 F.2d 91, 95 (2d Cir. 1977), Cert. denied, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 759 (1978), and is designed primarily to balance "the exclusive rights of a copyright holder with the public's interest in dissemination of information affecting areas of universal concern, such as art, science and industry." *Id.* at 94.

There are two fair use defenses available in trade dress or trademark infringement cases—classic and nominative. The classic fair use defense "applies only to marks that possess both a primary meaning and a secondary meaning—and only when

ORDER - 22

the mark is used in its primary descriptive sense rather than its secondary trademark sense." *Brother Records, Inc. v. Jardine*, 318 F.3d 900, 905 (9th Cir.2003).  In the Ninth Circuit, "the classic fair use defense is not available if there is a likelihood of customer confusion as to the origin of the product." *Cairns v. Franklin Mint*, 292 F.3d 1139, 1151 (9th Cir.2002).

To prove nominative fair use, a defendant must satisfy three requirements: (1) "the plaintiff's product or service in question must be one not readily identifiable without use of the trademark"; (2) "only so much of the mark or marks may be used as is reasonably necessary to identify the plaintiff's product or service"; and (3) "the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 809 (9th Cir.2003).

The Court does not find either type of fair use is applicable under the facts of this case.  There are numerous ways in which Defendants may entertain their Gonzaga fans without infringing Plaintiff's trademark(s).  Because the primary purpose of the trademark laws is to protect the public

ORDER - 23

from confusion,[6] it would be somewhat anomalous to hold that the confusing use of another's trademark is "fair use". *See also Truck Equipment Service Co. v. Fruehauf Corp.*, 536 F.2d 1210, 1215 (8th Cir.), Cert. denied, 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976).

The greater the similarity, the greater the likelihood of confusion. *GoTo.com. Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205-06 (9th Cir.2000). In the Ninth Circuit, secondary meaning is defined merely as "association" and has as its "basic element ... the mental association by a substantial segment of consumers and potential consumers 'between the alleged mark and a single source of the product.' " *Levi Strauss & Co.*, 778 F.2d at 1354, *quoting* McCarthy, §§ 15:2 and 15:11(B) (additional citations omitted).

"[W]hile the issue of likelihood of confusion is a mixed question of law and fact, the inquiry is predominantly a question of fact." *United States v. Six Thousand Ninety-Four (6,094) "Gecko" Swimming Trunks*, 949 F.Supp. 768, 771 (D.Haw.1996). The circumstances of each particular case

---

[6], *See W. E. Basset Co. v. Revlon, Inc.*, 354 F.2d 868, 871 (2d Cir. 1966).

ORDER - 24

dictate whether the determination is a question of law or fact. *J.B. Williams Company, Inc. v. Le Conte Cosmetics, Inc.*, 523 F.2d 187, 190 (9th Cir.1975). Where summary judgment is appropriate, however, injunctive relief is the remedy of choice. *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir.1988). Gonzaga indicated at the hearing that if its summary judgment is granted, it will moved for injunctive relief in a motion to follow.

Plaintiff has put forth evidence to establish secondary meaning for its Identifiers and Marks and the likelihood of confusion, relative to Defendants' use of the various Identifiers/Marks and combinations thereof. Plaintiff has shown the primary significance of its Identifiers and Marks is source identification.

Having found that Plaintiff has acquired secondary meaning in its Identifiers including the bulldog (with spike collar wearing a Gonzaga jersey), the Court finds that the bulldog mascot used by Defendants in the Spokane area closely resembles Gonzaga's bulldog mascot and that the public is likely to identify it as Plaintiff's mascot.

In the Complaint, Plaintiff states that "[i]n the past

ORDER - 25

weeks for example, multiple concerned citizens have voiced a concern or outrage that Gonzaga University would be affiliated or associated with a business that would engage in conduct such as naming a drink Date Grape Koolaid." ECF No. 1 at 8. As Judge Markey opined, the trademark laws are designed not only to prevent consumer confusion but also to protect "the synonymous right of a trademark owner to control his product's reputation." *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976). The depiction of the bulldog in a Gonzaga jersey using a urinal as shown in the March 23, 2013 posting on Defendants' social media advertising website, for example, violates §43(a) and the Plaintiff's right to control its reputation. (ECF. No. 22 at 21).

In the Ninth Circuit, neither an intent to confuse nor actual confusion are required elements of a trademark infringement claim. *See Coca-Cola Co. v. Overland, Inc.*, 692 F.2d 1250, 1256 n. 16 (9th Cir.1982) (intent to confuse); *Brookfield Communications, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1050 (9th Cir.1999) (actual confusion). Instead, "[l]ikelihood of confusion will be found whenever

ORDER - 26

consumers are likely to assume that a mark is associated with another source or sponsor because of similarities between the two marks." *Academy of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1456 (9th Cir.1991), *citing Shakey's, Inc. v. Covalt*, 704 F.2d 426, 431 (9th Cir.1983).

Defendants, as the nonmoving parties, have not designated specific facts showing that there is a genuine issue(s) for trial with respect to Plaintiff's §43(a) claim.  The Court finds, as a matter of law, evidence of record would permit a rational factfinder to conclude Defendants' use of the Gonzaga Identifiers and Marks is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Gonzaga with the radio station and bar services offered by Defendants' businesses, or as to the origin, sponsorship, or approval of Defendants' radio station and bar services, or other commercial activities.

As to Defendants' defense that Plaintiff lacks standing, the Court flatly rejects this contention.  On its face, Section 43(a) gives standing to sue to "any person who believes that he is or is likely to be damaged." *See L'Aiglon*

ORDER - 27

*Apparel Co. V. Lana Lobell, Inc.*, 214 F.2d 649 (3rd Cir.1954).

**E.   Conclusion**

Accordingly, the Court finds the likelihood of confusion exists and a violation of Section 43(a) has occurred.   The strength in the market of Plaintiff's Identifiers weigh in favor of finding likelihood of confusion required for Gonzaga's Lanham Act false designation of origin claim against Defendants as supported by Gonzaga's long and substantial use of the Identifiers and marks in connection with the college and well-known athletic program.

Accordingly, Plaintiff Gonzaga's Motion for [Partial] Summary Judgment, **ECF No. 21**, is **GRANTED.**   The Court specifically finds for Plaintiff with respect to the First Cause of Action (Violation of the Lanham Act, Section 43(a)).

The District Court Executive is directed to enter this Order.

**DATED** this 25th day of September, 2014.

*s/Lonny R. Suko*
_____
LONNY R. SUKO
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 28